IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 6, 2002

## LEE O. ANDERSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Fayette County**
**No. 4786      Jon Kerry Blackwood, Judge**

_____

**No. W2001-02951-CCA-R3-PC - Filed September 5, 2002**

_____

The petitioner, Lee O. Anderson, appeals the Fayette County Circuit Court's denial of his petition for post-conviction relief from his convictions for delivery of one-half gram of cocaine and delivery of less than one-half gram of cocaine. This court affirmed the judgments of conviction. See State v. Lee O. Anderson, No. W2000-00671-CCA-R3-CD, Fayette County (Tenn. Crim. App. Feb. 9, 2001), app. denied (Tenn. June 25, 2001). The petitioner claims that he received the ineffective assistance of counsel because his trial attorney (1) failed to present evidence of the petitioner's treatment for drug addiction in order to support a casual exchange defense and (2) failed to raise an insufficiency of the evidence claim on appeal of his convictions. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Shana McCoy-Johnson, Somerville, Tennessee, and Didi Christie, Brownsville, Tennessee for the appellant, Lee O. Anderson.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Ryan D. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This court's opinion in the petitioner's appeal of his convictions recounts the following facts:

On November 21, 1998, the defendant was approached by an undercover police officer who was working as part of a drug sting operation that was being conducted by law enforcement officials. During the first of three sales the defendant made to the undercover

police officer, the defendant sold $35 worth of crack cocaine to the undercover officer, which was later tested and found to weigh .1 grams.

On November 25, 1998, the same undercover officer made contact with the defendant a second time and asked the defendant to sell him $60 worth of crack cocaine. The defendant told the undercover officer to drive his car to the same area where the defendant had sold crack cocaine to the officer four days earlier. After a brief wait, the defendant met the officer and sold the officer $60 worth of crack cocaine. To play the role of a thankful drug user who appreciated the defendant getting the crack cocaine for him, the undercover officer gave the defendant some of the drugs. When the crack cocaine was later tested, it weighed .3 grams.

Finally, on November 28, 1998, the same undercover officer was flagged down by the defendant. On this third occasion, the defendant and the undercover officer returned to the area where the previous two drug transactions occurred. When the two arrived, the undercover officer told the defendant that he wanted to buy $100 worth of crack cocaine. The defendant then got out of the undercover officer's car, left for a short time, and then returned. When the defendant returned with the crack cocaine, the defendant found someone else in the car with the undercover officer. The defendant proceeded to run the other person off, telling that person that the undercover officer was "his customer." The transaction then occurred, ending with the undercover officer again giving the defendant some of the crack cocaine. When the crack cocaine was later tested, it weighed .5 grams.

On July 26, 1999, the defendant was indicted by a Fayette County Grand Jury for two counts of delivery of a controlled substance in an amount less than .5 grams, to wit cocaine, and one count of delivery of a controlled substance in an amount equal to .5 grams, to wit cocaine. The defendant was subsequently arrested . . . .

A jury convicted the petitioner of delivery of one-half gram of cocaine, a Class B felony; delivery of less than one-half gram of cocaine, a Class C felony; and simple possession of cocaine, a Class A misdemeanor. The trial court sentenced him as a career offender to concurrent sentences of thirty years for the delivery of one-half gram of cocaine conviction; fifteen years for the delivery of less than one-half gram of cocaine conviction; and eleven months, twenty-nine days for the simple possession conviction.

At the post-conviction evidentiary hearing, the petitioner testified that his trial attorney, who was retained, never explained to him the elements of the delivery of cocaine offenses and that he never understood his offenses. He acknowledged that there may have been witnesses who could have helped in his defense and that his attorney did not investigate them. He said he was addicted to drugs and alcohol at the time of the offenses. He said that between the time of the crimes in 1998 and the time of his arrest in 1999, he got help for his addictions through the J. B. Summer Treatment Program, Memphis Mental Health Institute (MMHI), New Directions Rehab, and Alcoholics Anonymous. The defense submitted records of the petitioner's treatment at the J. B. Summer Counseling Center and MMHI to the trial court.

The petitioner testified that he was working and "back on track" when he was indicted and arrested for the offenses. He said his attorney did not pursue any defenses other than casual exchange and simple possession. He said that his attorney never discussed using records from the drug treatment centers as evidence for his casual exchange defense and that his attorney did not call witnesses from the treatment centers to testify. He said that his family members knew about his addictions and that his attorney did not call them to testify in his defense. The petitioner acknowledged that although he had wanted his attorney to pursue an entrapment defense, he never discussed entrapment with his attorney.

The petitioner acknowledged that he had several prior felony drug convictions, that he was on parole at the time of trial, and that his attorney filed motions regarding whether those prior convictions could be used against him at trial. He said that he and his attorney discussed his right to testify and that his attorney indicated it was unnecessary for him to testify because the attorney "had covered everything." He said he took his attorney's advice and did not testify at trial or his sentencing hearing. When asked if he ever expressed a wish to testify, the petitioner replied, "Now I do." He said that his trial attorney was appointed to represent him in the appeal of his convictions. He said he did not know if his attorney alleged on appeal that the evidence was insufficient to support the convictions.

On cross-examination, the petitioner testified that he spoke with his attorney about six times before trial. He said that although his attorney explained unlawful delivery to him, his attorney did not fully explain it. He stated that he said something to his attorney about presenting records from the drug treatment centers at trial. He acknowledged that his attorney did not tell him that he could not testify.

Lily Anderson, the petitioner's mother, testified that the petitioner lived with her before his 1999 arrest. She said that in 1997 and 1998, the petitioner was addicted to drugs. She acknowledged that he went to several rehabilitation centers and that after his release from rehabilitation, he got a job. She said that at the time of the petitioner's arrest, he also was attending counseling sessions for his addictions. She said the petitioner's attorney did not ask her to testify at the petitioner's trial.

The petitioner's trial attorney testified that his law practice focused on criminal defense. He said that he had hoped to work out a plea agreement for the petitioner but that the state would not

consent to it. He said he met with the petitioner about six times before trial. He said he explained unlawful delivery to the petitioner and how it differed from casual exchange. He said he thought the petitioner understood the elements of the offenses. He said the only way to defend the case was to argue casual exchange. He said that entrapment was not a possible defense because the state could have shown with the petitioner's prior convictions that he was predisposed to commit the crimes.

The attorney testified that the petitioner had pled guilty to six or eight prior felony drug offenses. He said he told the petitioner that if the petitioner was convicted, the trial court would sentence him as a career offender and he would have to serve sixty percent of his sentence in incarceration. He acknowledged that the petitioner helped him prepare a trial strategy. He said the petitioner had planned to testify about the petitioner's treatment for drug addiction and that the testimony would have supported the casual exchange defense. He said that through his cross-examination of the state's witnesses, the jury heard about the petitioner's drug addiction, and, therefore, the petitioner did not need to testify. He said that when the petitioner's testimony became unnecessary, he recommended to the petitioner that he not testify. He said that although the trial court had ruled that the state could not impeach the petitioner with prior convictions, he was afraid the petitioner would open the door to the prior eight felonies. He said that he explained the risk in testifying to the petitioner and that the petitioner did not argue with him.

The attorney testified that he interviewed the state's witnesses, including Undercover Officer Dan Feathers, who was involved in the drug transactions. He said that he filed a request for discovery and that the state turned over a videotape showing the petitioner. He said that he handled the petitioner's appeal and that he did not raise a sufficiency of the evidence claim. He said he regretted not arguing on appeal that the evidence was insufficient to support the petitioner's convictions.

On cross-examination, the attorney testified that he did not remember a confidential informant being involved in the petitioner's case. He said that the evidence showed at trial that the petitioner was a drug addict. He said he did not introduce the petitioner's rehabilitation records into evidence because he did not think they would add anything to the defense.

The trial court denied the petitioner post-conviction relief. In its order, the trial court stated,

> Petitioner's basic contention is that counsel failed to present evidence that after the alleged event took place the petitioner began a process of drug and alcohol rehabilitation. Specifically, petitioner believed counsel should have presented reports from rehabilitative centers showing petitioner's treatment, as well as witnesses who could testify that petitioner had straightened out his life. The purpose of this evidence was to show that petitioner was a user of drugs and not a drug dealer. Counsel for petitioner testified that this was exactly the trial strategy he pursued. Further, the record indicated that the State's

-4-

proof conceded that the petitioner was a user. Therefore, counsel felt that this proof was amply before the jury.

The trial court did not address the attorney's failure to raise an insufficiency of the evidence claim on direct appeal.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). We review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

First, the petitioner claims that he received the ineffective assistance of counsel because his trial attorney failed to present evidence of the petitioner's treatment for drug addiction. He claims that this evidence was necessary to persuade the jury that he was a drug addict who was guilty of casual exchange. The state contends that the petitioner was not prejudiced by his attorney's failure to present the evidence because the evidence was cumulative. We believe that the petitioner has failed to demonstrate that he received the ineffective assistance of counsel.

-5-

At the evidentiary hearing, the petitioner's trial attorney stated that evidence of the petitioner's drug treatment was not needed because state witnesses testified at trial that the petitioner was a drug addict. Our review of the trial transcript reveals that Officer Feathers was the only state witness who made statements about the petitioner's being addicted to drugs. During the defense's cross-examination of Officer Feathers, the following exchange occurred:

> Q. Investigator, you have known Mr. Anderson for a while, haven't you?
>
> A. That's correct.
>
> Q. How long have you known him?
>
> A. Approximately, 20 something years.
>
> Q. A long time?
>
> A. Yes.
>
> Q. You know he is a crack addict?
>
> A. I know that he has an addiction.
>
> Q. You don't know that it is crack cocaine?
>
> A. Not personally.
>
> Q. But you know that he is addicted to some kind of drug?
>
> A. Alcohol or cocaine. I know that he has some type of addiction.
>
> Q. You know that he knows who most of the drug suppliers are around Fayette County?
>
> A. Most of them.
>
> . . . .
>
> Q. Don't you also know that he accommodates and helps out those who are looking for drugs, and he gets him a little something for doing so?

A. He assisted in three cases, yes.

Q. You are not suggesting that that's the only three times that he has ever done that?

A. No.

Q. In fact, you know that he has done that a lot?

A. That's correct.

During closing statements, the defense argued to the jury that the petitioner was a cocaine addict who was guilty of casual exchange.

Although additional evidence of the petitioner's drug addiction was available to bolster his casual exchange defense, we believe he has failed to show that he was prejudiced by his attorney's failure to present such evidence. At trial, the defense questioned Officer Feathers about the petitioner's drug addiction, and Officer Feathers testified that the petitioner was addicted to cocaine or alcohol. In addition, the defense argued the petitioner's drug addiction and casual exchange defense to the jury during closing statements. Moreover, the evidence in the trial regarding the drug sales strongly militates against casual exchange. In light of the proof and argument at trial, we conclude that the petitioner has failed to demonstrate that he received the ineffective assistance of counsel.

The petitioner also contends that his trial attorney was ineffective for failing to argue on appeal that the evidence was insufficient to support his convictions. However, when viewed in the light most favorable to the state, the evidence is sufficient to show that the petitioner committed the offenses. Therefore, he has not shown by clear and convincing evidence that his attorney was ineffective for failing to raise the issue on appeal.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE